(No. 53764

*In re* MARRIAGE OF RAE A. EVANS, Appellee, and DUANE E. EVANS, Appellant.

*Opinion filed June 4, 1981.—Rehearing denied October 19, 1981.*

Joe Billy McDade, of Peoria, for appellant.

James L. Hafele, of Peoria, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The petitioner, Rae A. Evans, filed a petition in the circuit court of Peoria County for the dissolution of her marriage to the respondent, Duane E. Evans. The circuit court entered a judgment dissolving the marriage on June 15, 1978, and on December 11 the court entered an order disposing of the property held by the parties. The petitioner appealed to the appellate court from the property disposition order. The appellate court, with one judge dissenting in part, reversed the order and remanded the cause (85 Ill. App. 3d 260), and we granted the respondent's petition for leave to appeal under Rule 315 (73 Ill. 2d R. 315). No question relating to the judgment of dissolution is presented on this appeal.

The parties were married in 1949. There were two children of the marriage, who are now adults and are not living with their parents. The parties separated on January 29, 1978, and on February 1, 1978, the petitioner filed

her petition, which alleged that the respondent was guilty of extreme and repeated mental cruelty.

The petitioner was 50 years old at the time of the divorce. She had secured a degree in education in 1972, and had been employed since 1975 as a full-time teacher in a school district in Peoria. Her income for the school year 1977-78 was $11,500. The respondent was 49 years old. He held a degree in mechanical engineering and was employed at the Caterpillar Tractor Company, where he had been hired in 1952. In 1978 he earned $28,000.

The circuit court denominated as nonmarital property, and awarded to the petitioner, a parcel of real estate in Iowa which she had inherited in 1960 and had sold under contract in 1973 for $40,000, along with those proceeds of the sale already received, amounting to $24,879. The respondent was assigned a parcel of real estate in Peoria which he had contracted to purchase for a new home.

The court characterized as marital property the jointly owned marital home, which had been purchased in 1956 for $13,900. The record does not show the source of the funds with which the home was purchased. At the time of the divorce $2,500 of mortgage indebtedness remained outstanding. The court found the home to be worth $45,000 and divided it between the parties. The petitioner was given sole title to the home and its furnishings, subject to the obligation to pay the mortgage installments and real estate taxes for 1978 and subsequent years. The respondent was awarded $21,500 as his interest in the residence. The court also divided between the parties three automobiles, 30 shares of stock, and several bank accounts totaling about $17,000.

The circuit court awarded the petitioner a one-half share in some 527 shares of stock in Caterpillar Tractor Company, referred to by the court as "vested," held in the respondent's account in an employees' investment program established by the company. The respondent

was directed to pay the petitioner $15,051, this being one-half the value of the stock, calculated at its market price of $57 1/8 per share on the date the judgment of dissolution was entered. The order provided, however, that the respondent need not pay this amount until "the first opportunity that such shares can be released from the Investment Program without penalty." Ownership of the other half of the 527 shares was awarded to the respondent, as were also "all rights to any and all unvested shares."

Both the petitioner and the respondent were participants in pension programs established by their respective employers. The trial court's order, without characterizing the pension benefits as being either marital or nonmarital property, provided:

> "The respective pension benefits of each of the parties under their respective pension plans or programs with their respective employers shall remain their separate property, and neither party shall have any right, title, or interest in and to such pension or pension benefits or any part thereof of the other party."

The court held that neither party was entitled to maintenance from the other.

A majority of the appellate court held that, with respect to the stock held in the respondent's investment-program account, the trial court should have classified all the stock as marital property, thus including an additional 72 shares, referred to by the majority as "nonvested." The majority also held that the trial court had likewise erred in failing to classify as marital property the pension rights of each party. The majority did not express an opinion as to the value of the "nonvested" shares of stock or of the pension rights, nor did it specify how their value should be determined, an operation which the opinion acknowledged would present "vexatious problems." Instead, it remanded the cause with directions that the circuit court reconsider its property settlement

order on the basis of the evidence already before it. 85 Ill. App. 3d 260, 264-65.

The majority's treatment of both the shares of Caterpillar stock and of the pension rights rested upon the proposition that any benefits which may be received by one spouse following the divorce, under a contract incident to his or her employment during the marriage, constitute marital property in which the other spouse is entitled to share under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503), even though the benefits in question may never be received by the employee because of the termination of his employment prior to the date when their payment becomes due, as the result of his death or his discharge or resignation. In reaching its decision the majority relied on previous decisions of the appellate court in *In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, and *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, and on the decision of the Supreme Court of California in *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633.

The third judge of the appellate court panel took the view that the trial court should have included the parties' pension rights as marital property but only to the extent that those rights were vested. He considered that the trial court was correct, however, in refusing to treat as marital property any additional stock in the respondent's investment account, since the respondent's receipt of further shares was contingent upon his continued employment.

The question whether potential future benefits arising out of employment should be treated as marital property has been before the appellate court in several cases. (See *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706; *In re Marriage of Pickell* (1979), 76 Ill. App. 3d 855; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835; *In re*

*Marriage of Donley* (1980), 83 Ill. App. 3d 367; *In re Marriage of Smith* (1980), 84 Ill. App. 3d 446; *In re Marriage of Musser* (1980), 90 Ill. App. 3d 18.) It has also been the subject of consideration in other jurisdictions (see Annot., 94 A.L.R.3d 176 (1979)), including some which recognize the community property doctrine, others, like Illinois, which adhere to the common law doctrine of marital property but which have enacted legislation patterned after section 307 of the Uniform Marriage and Divorce Act (see 9A Unif. Laws Ann. 142 (1979)), and still others which fall in neither of those categories. The question has not hitherto been presented to this court.

The status of income payable to a spouse after the divorce but attributable to his or her employment during the marriage raises a number of questions under section 503 of the Illinois Marriage and Dissolution of Marriage Act and under section 307 of the Uniform Marriage and Divorce Act as amended in 1971, upon which the Illinois Act is modeled. (See Ill. Ann. Stat. 1979, ch. 40, par. 503, Historical and Practice Notes (Smith-Hurd 1980).) Thus a question arises initially whether a contractual right to future income is "property" as that term is employed in section 503, since section 503(c) calls for marital property to be "divided," whereas the personal right of an employee to receive future payments from his employer is not susceptible to being divided in the same sense that real estate or personal property may be. Again, if the payment of benefits is contingent upon future events, such as the continuation of employment, a present award based on the discounted value of future payments to the employed spouse will prove excessive if the amount of benefits which he actually receives is less than the amount which was assumed.

Not surprisingly, treatment of the matter in other jurisdictions has not been uniform. In some a right to future income has been held not to constitute property

at all. (See, *e.g., Savage v. Savage* (1978), —— Ind. App. ———, 374 N.E.2d 536; *In re Marriage of Ellis* (1975), 36 Colo. App. 234, 538 P.2d 1347, *aff'd* (1976), 191 Colo. 317, 552 P.2d 506.) In others such a right has been considered to be a form of property which is susceptible to division only if it is presently vested. (See, *e.g., White v. White* (1975), 136 N.J. Super. 552, 347 A.2d 360; *Blitt v. Blitt* (1976), 139 N.J. Super 213, 353 A.2d 144.) In still others future income has been given the status of property even though the right to it is nonvested. See, *e.g., In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633.

As did the appellate court, the parties, in their briefs and on oral argument, proceed on the assumption that the disposition of this appeal requires a decision as to which of these doctrines should be adopted as the law of this State. We believe, however, that the case should be disposed of on a different ground.

Where one spouse has acquired a right to potential future benefits through his employment there is no way in which the other spouse may be awarded some defined interest in those benefits as marital property without a determination of the value they have to the employed spouse. A profit-sharing or retirement plan is a complex entity in which many factors must be taken into account in order to ascertain the monetary impact of the plan upon a given employee. (See Bonavich, *Allocation of Private Pension Benefits as Property in Illinois Divorce Proceedings,* 29 De Paul L. Rev. 1 (1979).) Without evidence of the value of the benefits here in question the circuit court could not award an interest in them to the other spouse as a just apportionment of marital property. (See *In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 370.) No evidence was introduced to show what value the nonvested shares of stock and the retirement benefits had to the spouse who was entitled to receive

them, and the petitioner having shown no error, the judgment of the circuit court must be affirmed.

We turn first to the evidence with regard to the stock held under the employees' investment program. The petitioner did not call any official of the employer to testify about the operation of the program, and no comprehensive description of it is included among the exhibits. The only evidence concerning the plan is a one-page letter from the manager of the employer's employee-benefit division furnished to counsel for the petitioner.

The letter states that as of June 1, 1978, the respondent's account held 527 shares, including 263 which had been purchased with the respondent's contributions and with dividends paid on that stock, and another 263 shares said to represent the "vested portion of shares purchased with company contributions and dividends." The letter states further that if the respondent should "withdraw from the Plan as of June 1, 1978," he would receive the 527 shares referred to above, but he would "forfeit" an additional 72 "unvested shares."

It is doubtless the last-mentioned statement which led the trial judge to insert in his order the provision that the respondent was not obligated to pay the petitioner the $15,051 found due her until the 527 shares could be withdrawn from the investment account "without penalty." Neither the letter nor any other evidence indicates that the forfeiture clause is at some point to become inoperative, or in what manner and on what date. The trial court's award of $15,051 to the petitioner will therefore not be effectuated until it is determined, upon application to the circuit court, if that should be necessary, that the award has become payable. The respondent did not appeal from the order of the circuit court, and this aspect of the order is not challenged here, however, so that there is no reason to set aside the award of the 527 shares.

The absence of evidence on the operation of the plan

makes it impossible for the trial court to enlarge the award to the petitioner by taking nonvested shares into account, however. This is so because neither the 72 shares nor any subsequent increment to the respondent's account was shown to be attributable to that segment of his employment which took place during the marriage rather than after the divorce, and because there is no basis in the record for assigning any dollar value to such shares of stock as may be purchased or contributed in the future.

As to the parties' retirement benefits, the only evidence with respect to the retirement income plan maintained by the respondent's employer was a letter written by the manager of employee benefits in reply to an inquiry by the petitioner's counsel as to what retirement benefits had accrued under the plan during the respondent's service, and what his retirement benefit would be if he were now 65 years old.

The letter notes that the entire pension was provided by the employer's contributions, and also that no benefits were currently payable because the respondent was not presently eligible to retire. The letter goes on to state:

> "If he left Company employment, however, the vested pension under the Caterpillar retirement Income Plan for Mr. Duane E. Evans as of June 15, 1978 would amount to $805 per month. That is the amount payable if payments commence on July 1, 1993 which is the first of the month following his 65th birthday. Such amount would be discounted 6% for each year (½ of 1% for each month) that payment commences prior to such date. There is no cash value to the vested benefit and no payments would be payable to anyone under the Plan after Mr. Evans' death unless he is then receiving his vested benefit and has elected a survivor option. The earliest date on which he could start receiving a vested benefit is July 1, 1983."

The figure of $805 per month presumably refers to the amount which the respondent would receive on the basis of his service up to the date of his divorce. Although testimony by the employer's director of employee benefits

might have clarified the point, it is not clear from the letter alone that the respondent would be entitled to any benefits from his employer were he to retire prior to reaching age 55.

In her post-trial motion, which was denied, the petitioner represented that depending upon the date of his retirement the respondent would enjoy pension benefits "somewhere between $194,000 and $286,000," and that her share would have a value of between $90,000 and $140,000. The factual basis for these figures is not made apparent, and the record does not show that there was any testimony to support them.

In her brief in this court, on the other hand, the petitioner asserts that the respondent's benefits would total $114,945. She arrives at that figure on the assumption that the respondent would retire at age 65, *i.e.,* in the year 1993, and would receive benefits until his death, which she assumed would occur in the year 2001 on the basis of his having an actuarial life expectancy of 24 years at the time of the divorce. The petitioner also states that the figure of $114,945 is predicated upon a monthly pension payment of $1,185. The latter figure is contrary to the evidence. In view of the state of the evidence, we conclude that the trial court did not err in ordering that whatever benefits the respondent might have under his employee's pension plan should remain his separate property. The petitioner's claim to an interest in the respondent's social security benefits must similarly be rejected. The petitioner's assertion as to the monthly amounts which the respondent will receive is not based on definitive information obtained from the Social Security Administration but only on a statement in the letter from the employer's manager of employee benefits that he "estimates" that these amounts would be available.

We reach a parallel conclusion as to the pension plan of the Teacher's Retirement System of Illinois, which

applied to the petitioner's employment. No official from the retirement system was called to testify concerning the structure and operation of the plan, and petitioner was not interrogated on the subject during her direct examination. On cross-examination the respondent introduced without objection a bulletin and a brochure subpoenaed from the retirement system which contained some particulars of the program. The petitioner, as a teacher employed on a full-time basis, was required to contribute 8% of her earnings each pay period to the retirement system, while the employer contributed 1%. The exhibits stated that a teacher would become eligible for a retirement allowance after completing one of several combinations of "attained age and years of creditable service," *i.e.*, 20 years of service at age 55, 10 years of service at age 60, or 5 years of service at age 62. Since the petitioner was 50 years old in 1978 and had been employed as a teacher for three years, under the schedule she would not be eligible for a pension until she reached 60, although by that time she would already have completed more than the requisite 10 years of service.

According to the provisions of the plan set forth in the exhibit, ascertainment of the amount of the monthly payment requires that the employee's "average" salary over a period of years be determined, and that there be applied to that figure a percentage which varies according to the number of years of service. It would then, of course, be necessary to isolate that part of the monthly payment which was attributable to the portion of the petitioner's employment which antedated the divorce. No evidence was introduced to show what the resulting amount would be.

In summary, we conclude that there was insufficient evidence introduced by the parties to establish a value for the "nonvested" shares of stock and for the retirement benefits, and that the trial court accordingly did not err

in failing to characterize these items as marital property and to award a marital share in them. We intimate no opinion as to the circumstances, if any, in which a right to future payments of income should be treated as marital property.

The judgment of the appellate court is accordingly reversed, and that of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*