*In re* MARRIAGE OF JACK M. KUNDIT, Petitioner-Appellee, and LORRAINE KUNDIT, Respondent-Appellant.

First District (2nd Division)    No. 81-1393

Opinion filed June 8, 1982.

Paul R. Jenen, of Wheeling, for appellant.

Robert F. Lisco, of Lisco & Field, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

On February 6, 1981, the marriage of Jack Kundit (Jack) and Lorraine Kundit (Lorraine) was dissolved and the marital property apportioned in the circuit court of Cook County. Respondent, Lorraine, appeals from that portion of the judgment disposing of the marital

property and the award of maintenance. She presents the following issues for our review: (1) whether the trial court abused its discretion in its division of the marital property; (2) whether the trial court erred in denying her post-trial motion; (3) whether the trial court abused its discretion in its determination of maintenance; and (4) whether the trial court abused its discretion in denying her motion for a continuance at trial.

For the reasons which follow we affirm in part and reverse in part.

Jack and Lorraine were married on November 5, 1960. Their marriage produced two children: Michael Duke Kundit, who had reached the age of majority at the time of dissolution, and Jack, Jr., 15 years old. Their marriage was dissolved on the ground of Lorraine's constructive desertion.

Jack was employed by United Airlines as a mechanic throughout the marriage. He had a high school diploma, and his net earnings fluctuated from approximately $1400 to $2000 per month depending on the amount of overtime. Lorraine worked for Bell and Howell for approximately 18 months during the marriage. She earned $155 per week net, and she left her job by mutual agreement between herself and her employer.

There is scant evidence in the record regarding the marital assets and their respective values. The marital residence was a four-bedroom house located in Lincolnwood, Illinois. The house had been purchased in 1971 for $33,000 and had an outstanding mortgage of approximately $12,000. The monthly payments on the mortgage were $179. Jack testified that the other marital assets included his credit union account of $200, two boats which were purchased for $1600 but which had a present value of $500, two outboard motors purchased used for a total of $275, 100 shares of Commonwealth Edison stock which he testified was "selling for around eighteen [or] nineteen dollars a share" at the time of the hearing and a used camper purchased for $200.

Lorraine testified that she had obtained a settlement of $4000 for a personal injury suffered in an automobile accident in 1979 and that she spent these proceeds on living expenses and her son's education. Lorraine also claimed that the marital debts included $5750 that she had, over a period of time, borrowed from her stepfather, Casimir Mazur, and which she also had spent on living expenses. Although on January 8, 1981, she testified that she had not signed a note securing this loan, the record discloses that attached to her post-trial motion is a photocopy of a promissory note dated September 1, 1980. The note was apparently signed by Lorraine subsequent to her January 8, 1981, testimony and purports to evidence her debt to her stepfather. Other marital debts included a $350 doctor's bill, $500 owed to Visa, $100 owed to J. C. Penney Co., $100 owed to Texaco, a $100 dental bill, and $201 for homeowner's insurance.

The record reflects no evidence of the value of various marital assets:

six life insurance policies on the family members, Jack's pension fund rights and three automobiles, a 1971 Chevrolet and a 1973 Chevrolet, both of which were in the possession of Jack, and a 1976 Buick which was in the possession of Lorraine.

In apportioning the marital property, the trial court awarded to Jack and Lorraine equal shares of the marital residence with Lorraine to have exclusive possession until the minor child reached the age of majority. Although there is no evidence in the record to establish their value, the court awarded to Lorraine all of the household furnishings. She also received the two boats, the Buick and the proceeds of her personal injury settlement. She was granted $280 per month in child support and for one year only $70 per month in maintenance. The court placed a value of $9500 on the personal property awarded to Lorraine. Where there is no evidence in the record concerning the value of a particular asset, the trial court apparently based its valuation on the court's own estimate.

Jack received the remainder of the personal property including the balance of his account with the credit union, the rights to his pension fund, the two Chevrolets, his tools, the camper and the Commonwealth Edison stock. The total value of these assets as determined by the trial court was $4500. The court also ruled that the parties were to share the marital debts equally.

## I

Lorraine contends that the trial court abused its discretion by apportioning the marital property without first ascertaining the value of certain marital assets.

Initially Jack contends that by her failure to offer any evidence on the value of such assets, Lorraine has waived her right to appeal on this issue. In support of his contention Jack relies on *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421, and *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.

It is apparent from a reading of both *White* and *Leon* that rather than support Jack's waiver argument, these cases oppose his position. *White*, which relied on *Leon*, dealt with the sufficiency of evidence needed to establish the value of a professional corporation. The court there rejected the husband's argument that since the wife did not offer any evidence as to the value of the corporation, she failed to preserve this contention for review. The court stated that it could not "equate lack of sufficient evidence with waiver \* \* \*." (98 Ill. App. 3d 380, 383.) In accordance with *White* we hold that Lorraine's failure to present evidence of the value of certain assets did not constitute a waiver of her contention that the evidence in fact presented to the trial court was insufficient to establish the value of those assets.

The Illinois Marriage and Dissolution of Marriage Act (Act) mandates that a trial court divide the marital property between the spouses "in just proportion" without regard to fault. (Ill. Rev. Stat. 1979, ch. 40, par. 503.) For a trial court to apportion marital assets under section 503, the proper value of such assets must be established. (*In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337.) Where the record lacks proper evidence of valuation, there is no basis upon which an appellate court can review the propriety of a trial court's apportionment of marital property. *In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96; *White*; *Leon*.

The asset with which Lorraine is primarily concerned is Jack's interest in his pension fund. She contends that there was insufficient evidence in the record to support the trial court's valuation and apportionment of Jack's pension fund. She argues that this cause must be remanded so that the trial court can receive evidence on its value and apportion it as marital property according to section 503.

We believe our supreme court's recent opinion in *In re Marriage of Evans* (1981), 85 Ill. 2d 523, 426 N.E.2d 854, is dispositive of Lorraine's contention regarding this asset. In *Evans* the trial court failed to apportion under section 503 the pension fund benefits that each spouse had earned. The appellate court reversed, holding that the trial court had erred in failing to classify and apportion the pension fund rights as marital property. In reversing the appellate court the supreme court, focusing on the sufficiency of the evidence of the value of the benefits, held: "Where a spouse has acquired a right to potential future benefits through his employment there is no way in which the other spouse may be awarded some defined interest in those benefits as marital property without a determination of the value they have to the employed spouse." (85 Ill. 2d 523, 529.) The court then analyzed the evidence presented by the spouse seeking the apportionment and concluded that her evidence was insufficient to establish the present value of the pension plan. In such circumstance the supreme court ruled that the trial court did not err by failing to characterize the pension plan benefits as marital property nor by refusing to award a marital share in them. We note that in its summation the supreme court stated: "We intimate no opinion as to the circumstances, if any, in which a right to future payments of income should be treated as marital property." 85 Ill. 2d 523, 534.

We interpret *Evans* to hold that absent sufficient evidence of the present value of future pension fund benefits, an award of an interest in such benefits is inappropriate under section 503. Since it is clear that in the case at bar the evidence presented to the trial court did not establish the value of the pension plan benefits, we hold that the trial court erred in apportioning to Jack the amount of his pension fund benefits under

section 503. We also note that according to *Evans* Jack should retain his pension fund benefits as his "separate property" and that upon remand the trial court should discount such property in reconsidering the apportionment of the marital property.

■■ With regard to the other items of personal property, it is manifest from the record before us that the parties presented no evidence upon which the trial court could base its valuation of the household furnishings, the life insurance policies or the three automobiles. The evidence of value which was presented appears to be the mere guesswork of the litigants. Given this lack of adequate evidence concerning the value of the marital assets, there is no basis upon which we can review the trial court's apportionment of the marital property. Accordingly, this cause requires remandment to the trial court for the purpose of receiving evidence concerning the marital assets and then to apportion them in "just proportion."

Lorraine also argues that it was an abuse of the trial court's discretion to apportion to her as marital property the $4,000 she received from the settlement of her personal injury claim since this money was spent on living expenses and therefore no longer existed as a marital asset. We agree.

■■ Although it has been ruled that settlement proceeds received by a spouse are in fact marital assets, it would seem apparent that when such proceeds are expended by the spouse on living expenses it no longer exists as a marital asset and thus cannot be apportioned as marital property under section 503. See *In re Marriage of Gan* (1980), 83 Ill. App. 3d 265, 404 N.E.2d 306.

Under the Illinois Marriage and Dissolution of Marriage Act, maintenance and child support are directly related to the final property disposition since these awards are substantially dependent upon the financial resources of the parties, including marital property. (Ill. Rev. Stat. 1979, ch. 40, pars. 504(b)(1), 505(a)(2), 508(a).) Since it has been determined that this cause will be remanded for a reconsideration of the apportionment of the marital property, the maintenance and child support awards should likewise be reevaluated by the trial court so that it may properly consider any changes required in the disposition of such property. Therefore, Lorraine's contention that the trial court abused its discretion in the determination of maintenance need not be addressed here.

## II

Lorraine's next contention is that the trial court erred in denying her post-trial motion. In this motion she sought to have the trial court rectify some discrepancies between its written order of judgment and its oral findings of fact.

■■ As Lorraine correctly points out, the written judgment misstates the

amount of indebtedness of the Kundits in two instances. First, the written judgment states that each party must pay one-half of the $100 owed to Visa. The evidence showed, however, that the couple actually owes Visa $500. Secondly, the judgment understates the medical and dental bills by $100. Although Jack concedes that he is liable for one-half of the debts regardless of the misstatements, the judgment is ambiguous in that it requires each party to pay 50% of a specified indebtedness that is incorrectly stated. In the interest of accuracy and harmonious disposition of the debts, the trial court should conform its written order to the evidence presented at trial.

A more substantial dispute concerns the $5750 which Lorraine received from her stepfather. She argues that the trial court found that this sum was a loan to her and that in its oral finding the trial court indicated that Jack would be responsible for its repayment. The written judgment, however, makes no disposition of this money. Lorraine contends, therefore, that the written judgment is defective and that the trial court erred in refusing to rectify it.

Jack contends that the trial court found that this sum of money was a gift to Lorraine and as such it was not marital property and was, therefore, properly omitted from the trial court's disposition of the marital property.

In its oral findings the trial court made these equivocal statements regarding the $5750 Lorraine received from her stepfather:

"The court questions and has no real evidence to indicate that there is a bona fide debt * * * [i]t could very well be construed as a gift. However [if it is] not a gift Mr. Kundit will be responsible for the payment."

Faced with these ambiguous statements we must either remand to the trial court for a specific determination whether the transaction between Lorraine and her stepfather was a loan or a gift or indulge in the speculation that because the written judgment omits any reference to the transaction the trial court determined that it was indeed a gift and, therefore, properly omitted from the disposition of the marital property.

■■ The amount of money involved here is so substantial relative to the balance of the marital estate that its disposition materially affects whether the marital property was justly apportioned under section 503. Thus this cause must be remanded for a specific finding by the trial court as to the character of the transaction between Lorraine and her stepfather.

### III

Lorraine's final contention is that the trial court abused its discretion in denying her motion for a continuance.

The record indicates that Lorraine received a number of continu-

ances and several warnings from the trial court that no further continuances would be allowed. Lorraine changed trial counsel four times, and each time the new attorney sought a continuance in order to prepare for trial. Finally, on November 10, 1980, Lorraine's third attorney, Mr. Gruener, moved to withdraw as her counsel. The trial court refused him permission to do so unless new counsel for Lorraine appeared and was ready to proceed on December 10, 1980, the date set for trial. On December 10 Lorraine's new attorney, Ms. Courtney, appeared and moved for a change of venue. When this motion was denied, she moved for a continuance on the grounds that she was unprepared for trial, she did not have the file with her and Lorraine's father had died just two days before.[1] The trial court denied this motion and ordered Mr. Gruener, who was present, to represent Lorraine. The record indicates that Ms. Courtney conducted the examination of the witnesses and made the oral argument on Lorraine's behalf, but the judgment of dissolution is signed by both Mr. Gruener and Ms. Courtney.

The law is clear that the granting or denying of a continuance is within the discretion of the trial court, and a court of review will not disturb the court's determination unless there has been an abuse of discretion. *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571.

■■ Although it is understandable that Lorraine would be distressed by the recent death of her father, this circumstance would not necessarily require the trial court to grant her motion for a continuance. Moreover, her counsel's failure to be prepared for trial or the fact that she neglected to bring her file with her does not indicate that the trial court abused its discretion by denying her a continuance. Consequently, on this issue, we affirm.

In summary, the trial court's denial of Lorraine's motion for a continuance is affirmed; the apportionment of the settlement proceeds and pension fund benefits is reversed; the apportionment of marital property for which there is inadequate evidence of value is reversed and remanded to the trial court with directions to establish such value; the trial court is directed to modify its written judgment to conform to the evidence; and the trial court is directed to render a finding with respect to the nature of the debt relationship between Lorraine and her stepfather.

Affirmed in part; reversed in part and remanded for further proceedings not inconsistent with this opinion.

STAMOS, P. J., and HARTMAN, J., concur.

---

[1] Although Lorraine's counsel claimed on December 10 that Lorraine's father had died just two days before, Lorraine testified that he had died on December 3, 1980, which was actually seven days prior to the hearing.