JUSTICE McGLOON
 

 delivered the opinion of the court:
 

 Respondent appeals from the judgment entered in a dissolution of marriage proceeding. On appeal, respondent contends that the trial court abused its discretion by (1) apportioning to him unexercised options to purchase stock; (2) classifying as marital property his contractual interest in real property; and (3) applying the criteria of section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(d)).
 

 We affirm in part, reverse in part, and remand.
 

 Petitioner and respondent were married on August 25, 1975. No children were born during the marriage. The parties separated in December 1979. Shortly thereafter, respondent was injured as a result of an automobile accident. Although respondent testified that his health was deteriorating as a result of the accident, he has not filed a personal injury or workers’ compensation claim to date.
 

 In 1981, respondent earned $52,500 as a vice-president of Bally Manufacturing Corporation (Bally). Petitioner earned $11,500 from part-time employment as an optician.
 

 On May 4, 1981, petitioner filed a petition for the dissolution of their marriage. The trial court entered an agreed order which awarded petitioner temporary support and divided the proceeds of a certain bank account equally between the parties. After a bifurcated hearing, a judgment dissolving their marriage was entered on August 26, 1982. In addition, the judgment classified the following assets as marital property and distributed them as follows: petitioner was awarded (1) the marital residence valued at $72,000, subject to a $33,500 mortgage; (2) a 1979 Oldsmobile automobile; (3) a Honda motorcycle; (4) a snowmobile; and (5) household furnishings. In addition to the above items, respondent was ordered to pay petitioner $30,000 in installments of $750 per month.
 

 Respondent was awarded (1) all interest in stock options to purchase Bally’s stock below market value, valued at $25,700; (2) all rights to respondent’s profit-sharing account at Bally that had become vested, valued at $30,000; (3) the interest held by respondent in contract to purchase real estate located at 1812 Sprucewood, Lindenhurst, Illinois (Sprucewood property), valued at $11,000; (4) a 1975 Ford automobile; (5) a Honda motorcycle; (6) a camper; (7) a boat and trailer; (8) various items of personal property; and (9) any and all rights that may arise out of a cause of action involving personal injuries sustained by respondent in the 1980 automobile accident.
 

 First, respondent contends that it is inequitable to distribute to him unexercised options to purchase 3,000 shares of Bally common stock which the court valued at $25,700. Arguing that the trial court’s valuation is erroneous in that the options have no value until such time as they are exercised, he further contends that the trial court should retain jurisdiction over the case until the options are exercised or expire. We agree.
 

 Respondent was the recipient of two stock options. The stock option agreements are contained in the record. One agreement, dated August 16, 1978, provides that respondent shall have the right to acquire 2,000 shares of Bally common stock at a price of $21.47 per share. The second agreement, dated March 27, 1980, grants respondent the right to purchase an additional 1,000 shares at $20.25 per share. The agreements, by their terms, limit respondent’s right to exercise the option to a specific percentage of the aggregate number of shares. This percentage increases by 20% each year until the option is fully vested four years and six months after the date of issuance. Both agreements provide that the options are nontransferable and expire five years and one month after issuance. Finally, the agreements provide that if respondent’s employment terminates, the options expire after a three-month period.
 

 In valuing respondent’s right to exercise his option to purchase Bally stock, the trial court subtracted the cost of 3,000 shares, at the reduced option prices, from the price it would have cost respondent to acquire the same number of shares on the New York Stock Exchange. The court determined the latter price by taking judicial notice of the closing price ($29.20) at which Bally stock was traded on the market on June 6, 1982 (the day before the hearing), and multiplying that price by the aggregate number of shares subject to both agreements. The calculations performed determined the profit that respondent would realize if he were able to purchase 3,000 shares of Bally’s common stock at the price fixed by the company’s nonqualified stock option plan and sell them at the market value on June 6,1982.
 

 The judgment for dissolution of marriage states that the option to purchase Bally stock below market value was property accumulated by the parties during the marriage. The court then allocated to respondent the various marital property listed above, including all interest and rights granted respondent pursuant to the stock option agreements.
 

 The issue of whether potential future benefits arising out of one’s employment should be treated as marital property has been addressed by this court in several cases. (See In re Marriage of Evans (1981), 85 Ill. 2d 523, 426 N.E.2d 854, and the cases cited therein.) Our research has disclosed no cases which deal specifically with options to purchase stock granted to an employee as compensation for services he performed during the marriage. However, in Evans, the trial court awarded petitioner a one-half share in 527 “vested” shares of stock held by respondent in the employee’s investment program established by the employer-company. Respondent was awarded ownership of the other half of the 527 shares. The trial court refused to treat the additional stock in respondent’s investment account as marital property since the respondent’s receipt of those shares was contingent upon his continued employment. All rights to these “unvested” shares of stock were, nevertheless, awarded to respondent.
 

 In reversing the trial court, a majority of the appellate court held that the shares of stock held in respondent’s investment program account represented “nonvested” rights susceptible to valuation and should have been classified as marital property for the purposes of a property division in a marriage dissolution proceeding. Justice Barry disagreed with the majority’s classification of the nonvested shares of stock as marital property. He reasoned that the respondent had no withdrawal rights in the stock and that receipt of said stock was contingent upon respondent’s continued employment. Although the non-vested shares of stock were admittedly a resource, Justice Barry concluded that they were contingent and speculative and therefore neither property nor marital property. He believed, however, that non-vested employee benefits should be treated as anticipated income and considered by the trial court in deciding whether to award maintenance.
 

 The Illinois Supreme Court reversed the appellate court. The court initially considered the question of whether a contractual right to future income is “property” to be divided under section 503(c) of the Act. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) In considering this question, the court commented on the problems associated with allocation of these rights:
 

 “[T]he personal right of an employee to receive future payments from his employer is not susceptible to being divided in the same sense that real estate or personal property may be. Again, if the payment of benefits is contingent upon future events, such as the continuation of employment, a present award based on the discounted value of future payments to the employed spouse will prove excessive if the amount of benefits which he actually receives is less than the amount which was assumed.” (85 Ill. 2d 523, 528, 426 N.E.2d 854, 857.)
 

 However, the case was ultimately disposed of on the grounds that the spouse seeking the apportionment failed to present sufficient evidence as to the value of the nonvested shares thereby making it impossible for the trial court to enlarge the award to petitioner. In so holding, the court stated:
 

 “Where one spouse has acquired a right to potential future benefits through his employment there is no way in which the other spouse may be awarded some defined interest in those benefits as marital property without a determination of the value they have to the employed spouse.” 85 Ill. 2d 523, 529, 426 N.E .2d 854, 857.
 

 This court has interpreted Evans as holding that an award of an interest in future benefits derived from one’s employment is inappropriate under section 503 (Ill. Rev. Stat. 1981, ch. 40, par. 503) where the evidence presented does not establish the present value of the benefits.
 

 In this case, we note initially that it was improper for the trial court to take judicial notice of the price at which Bally stock was traded on June 6, 1982. (In re Marriage of Leon (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.) Also, there is insufficient evidence to support the trial court’s valuation without reference to petitioner’s attorney’s opening statement, wherein the closing price of the stock on the New York Stock Exchange was .mentioned because petitioner failed to present sufficient other evidence.
 

 Furthermore, the following factors actually make it impossible to value the options until such time as they are exercised. First, under the terms of the option agreements, the stock options are nontransferable and thus respondent is unable to realize any profit from a sale or an assignment of his interest under the agreements. Respondent, therefore, would have to exercise the options in order to realize any profit. If they expire without ever being exercised, they have no value whatsoever. Second, on the date of the hearing, only 1,600, rather than 3,000, shares were exercisable under the restrictions expressed in the agreements. Third, respondent presented evidence that his deteriorating health and lack of liquid capítol make it impossible for him to exercise the options without obtaining a loan. Respondent would be required to raise a total of $33,864 in order to exercise his rights under the agreements as of June 6, 1982. Finally, the margin requirements imposed by law restrict respondent from borrowing more than 50% of the full purchase price. Even if respondent were able to obtain a loan for that amount, he would have to raise almost $17,000 from his own sources. Given the above scenario, it is possible, if not probable, that respondent might never be able to exercise the options prior to the expiration dates of the purchase agreements.
 

 Under the circumstances of the present case, we find that the stock options do not constitute property under section 503 until such time as they are exercised. The trial court erred in apportioning to respondent all interest and rights to the stock option agreements valued at $25,700. Respondent should retain his interests in the stock option agreements as his “separate property.” In re Marriage of Kund.it (1982), 107 Ill. App. 3d 310, 437 N.E.2d 777.
 

 Accordingly, we remand this case to the trial court for reconsideration and apportionment of the marital property. We also direct the trial court to retain jurisdiction until such time as the options are exercised or expire. If and when the options are exercised, the trial court may at its discretion allocate an appropriate share of any profit realized from the transaction to each spouse.
 

 Second, respondent contends the record does not support the trial court’s valuation of the Sprucewood property at $11,000. He further contends that it was an abuse of the trial court’s discretion to apportion to him as marital property his contractual interest in the property. We disagree.
 

 On May 26, 1981, the parties entered into an agreed order which divided the proceeds of a certain bank account equally between them. Each party received approximately $6,000. Respondent testified that a portion of the proceeds was used to pay part of the initial down payment of $11,200. The total purchase price was $56,000. The initial closing occurred on October 2, 1981. The contract balance of $44,800 is payable in monthly installments of $471.85. Respondent testified that the property is rental property and that he receives rental payments of $471.85 which he applies to the contract balance.
 

 We find that the record contains competent evidence to support the trial court’s valuation of the Sprucewood property. In re Marriage of Hyland (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662.
 

 We further find that the trial court did not err in classifying respondent’s interest in the Sprucewood property as marital property. Section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(b)) provides that all property acquired by either spouse “after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property.” The presumption is rebutted only where the evidence establishes that the entire property was acquired exclusively by one of the methods listed in the exception section of the Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)). (In re Marriage of Smith (1981), 86 Ill. 2d 518, 427 N.E.2d 1239.) In the instant case, respondent failed to rebut this presumption. We conclude that the trial court correctly classified respondent’s initial interest in the Sprucewood property valued at $11,000 as marital property.
 

 In view of our disposition of the case, we need not address respondent’s final contention.
 

 Judgment affirmed in part, reversed in part; cause remanded.
 

 GOLDBERG and CAMPBELL, JJ., concur.